STATE OF CONNECTICUT *v.* FERDINAND BAILEY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 14-8690

Argued February 2—decided March 12, 1962

*Peter J. Zaccagnino, Jr.,* of Hartford, for the appellant (defendant).

*Herbert Older,* assistant prosecuting attorney, for the appellee (state).

JACOBS, J. The defendant was presented for a violation of General Statutes § 53-298, which forbids policy playing. He was found guilty in a trial to the jury and has appealed on the sole ground that the court erred in denying his motion to suppress or strike the evidence from the record because the state failed to introduce the search warrant as part of its case against the defendant.

The material facts appear in the record in the form of a written stipulation. On October 9, 1961, at about 1 p.m., the police apprehended the defendant and made a search of his car and person to determine whether he was carrying policy slips. One of the police officers testified that he and a fellow officer went to the home of the defendant at 2513 Main Street, Hartford, and that "he had a search warrant for said premises, car and person." During the course of their search, they found policy slips. The defendant did not testify or offer any evidence. During the trial, the search warrant was not produced by the state, nor was its failure to produce accounted for or explained. No objection was made in the course of the trial to the introduction of the incriminating evidence. The sole question presented for our determination under the stipulated facts is whether it was necessary for the state to prove the existence of a valid search warrant prior to the introduction of evidence obtained under and by it.

"Various documents or instruments issued by authority of law and approved by the courts or public

officers are presumed to have been regularly issued. This is true as to search warrants . . . ." 1 Wharton, Criminal Evidence (11th Ed.) § 160, p. 176; 47 Am. Jur. 521, § 31. "The burden rests upon the defendant to prove the invalidity of the search warrant." Wharton, op. cit. § 197, p. 219; 79 C.J.S. 917, § 98. And even "[a]ssuming that evidence obtained by an unlawful search and seizure is inadmissible, it is necessary for the accused who desires such evidence to be excluded at his trial to make a timely objection to its introduction; otherwise, the right to object is lost." Note, 50 A.L.R.2d 583. "Most courts hold that the victim of an unreasonable search and seizure loses his rights under the Fourth Amendment, or its counterpart in state constitutions, if he does not assert them prior to the introduction of the seized evidence in his trial." Edwards, "Seasonable Protests against Unreasonable Searches and Seizures," 37 Minn. L.R. 188, 190. It would seem that the constitutional privilege to exclude the admission of illegally seized evidence should not permit a defendant to allow the introduction of questionable evidence without objection in the hope that he may succeed on the merits, but with the assurance that if he loses, he may attack such evidence and secure a new trial. Thus it has been argued that a defendant should not be "permitted to speculate on the outcome of the state's case, and, after ascertaining that the state's evidence is of an incriminating nature, then, for the first time, interpose an objection that it was illegally obtained." *Webb* v. *State,* 33 Okla. Crim. 77, 79.

The cases cited by the defendant are distinguishable on the facts. For example, in *Mapp* v. *Ohio,* 367 U.S. 643, the most recent pronouncement of the United States Supreme Court on the subject of searches and seizures and on which the defendant places heavy reliance, although it is true that the

search warrant was never produced at the trial, the issue of illegally seized evidence is contained in the case from the time counsel moved to suppress the evidence before trial under local state procedure. As a matter of fact, the Ohio Supreme Court, in reviewing petitioner's conviction, expressed "considerable doubt as to whether there was ever any warrant for the search of defendant's home." *State* v. *Mapp,* 170 Ohio St. 427, 430; see also id., 438, where Herbert, J., dissenting, remarked: "In fact, it was not even contended by the prosecution that a warrant was ever issued authorizing a search of . . . [defendant's] home for obscene literature." In the case at bar, the officer's testimony that he was armed with a search warrant was belatedly challenged.

In *Satterfield* v. *State,* 47 Okla. Crim. 418, a case in point, the defendant was convicted of unlawful possession of intoxicating liquor. At the close of the state's evidence, the defendant moved the court to suppress the evidence for the reason that the state had not introduced the search warrant to show authority to search the premises of the defendant. The defendant contended that the trial court erred in permitting the state to introduce testimony to show what was found in the defendant's house and restaurant without first having offered the search warrant to justify the search. The court, in sustaining the conviction, held that the burden of proving the invalidity of the search rested on the defendant and not on the state.

The evidence in the case at bar shows that the officers who made the search had a search warrant. There is nothing in the record to show it was illegal and not properly obtained upon affidavit showing probable cause. Where the evidence is that a search warrant was issued and executed, the presumption is that the proper legal proceedings were observed, and the burden was on the defendant to overcome

that presumption. This he failed to do. The defendant has waived his right to be heard on this question. See 2 Varon, Searches, Seizures and Immunities, p. 661.

There is no error.

In this opinion ZARRILLI and EIELSON, Js., concurred.