Jimmy ASHER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–75–447.

Court of Criminal Appeals of Oklahoma.

March 8, 1976.

Rehearing Denied March 29, 1976.

Jack B. Sellers, and Allen B. Mitchell, Sapulpa, for appellant.

Larry Derryberry, Atty. Gen., Robert D. McDonald, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Jimmy Asher, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Creek County, Case No. CRM–73–616, for the offense of Unlawful Possession of Marihuana, in violation of 63 O.S.1971, § 2–402.

The jury fixed his punishment at six (6) months' imprisonment in the County jail, and from said judgment and sentence a timely appeal has been perfected to this Court.

In the proceedings before trial, defendant's motion to suppress the evidence was denied.

Wilbur Ginn testified that at approximately 6:40 p. m. on November 11, 1973, while visiting relatives at the Cherry Hill Apartments, Apartment number 206, in Sapulpa, he heard loud music coming from a nearby apartment. He stated that he then looked out his door and observed the defendant standing in the open doorway of Apartment number 207. According to the witness, he also smelled the odor of burning marihuana at this time. The witness closed his door when defendant turned to leave. Several seconds later Mr. Ginn reopened his door and noticed that the door to the other apartment was closed and that the odor of marihuana was greatly diminished. Mr. Ginn then testified that he was familiar with the odor of burning marihuana and that he was employed by the Owasso Police Department on November 11, 1973. He further stated that he notified Detective Clark of the Sapulpa Department of his observations and signed the affidavit for a search warrant late that night.

Tom Clark, a Detective with the Sapulpa Police Department, testified that on November 11, 1973, he, Sergeant Joe Collins, Charles Williams and Lieutenant Johnny Moore arrived at defendant's apartment with a search warrant. He testified that no one answered when he knocked on the door and therefore a passkey was used to enter the apartment. The witness stated that the defendant arrived while the search was in progress and was then served a copy of the search warrant. He further testified that he found a greenish brown leafy substance in a cigar box in a kitchen cabinet and that he transmitted the evidence to Mr. Bill Warden of the Sapulpa Health Department for analysis.

On cross-examination, Detective Clark testified that the search warrant was not posted on the door of defendant's apartment when the search commenced. He stated that it remained on his clipboard until defendant entered the apartment, at which time it was served on the defendant.

Sergeant Joe Collins, a Detective with the Sapulpa Police Department, identified the defendant as the person who entered the apartment while the search was in progress.

Charles Williams of the Sapulpa Police Department identified State's Exhibit No. 2 as a "smoker type pipe" which he found in the closet in the back bedroom of defendant's apartment.

On cross-examination Officer Williams testified that a cigarette would loosely fit in the holder of the smoker and that he did not know if the device worked.

Lieutenant Johnny Moore, a police officer with the Sapulpa Police Department, testified that he assisted in the search of defendant's apartment conducted at about 10:30 p. m. on November 11, 1973. He stated that after being read his Miranda rights, defendant said that the marihuana found in his kitchen was strong and that he had grown it himself. The witness identified State's Exhibit No. 2 as a water pipe and stated that such devices are used in the consumption of marihuana.

On cross-examination Lieutenant Moore stated that the marihuana had been found in an unlocked box in a kitchen cabinet that anyone having access to the apartment could have opened.

Bill Warden, a registered sanitarian with the Sapulpa Health Department, testified that State's Exhibit No. 3 was tested and found to be cannabis sativa, commonly known as marihuana. He stated that he had performed the Duquenois reagent test on the substance and made a microscopic examination of it. On cross-examination Mr. Warden testified that he knew of no substance other than marihuana which

would produce a positive reaction to the Duquenois reagent test. He further testified that the substance had the odor of marihuana.

On re-direct examination, Detective Clark identified State's Exhibit No. 3 as the greenish-brown leafy substance which was found in defendant's apartment. Defendant objected to the admission into evidence of State's Exhibit No. 3. Thereafter, the State rested.

The first witness for the defense was Jimmy Asher, the defendant. He testified that he had been married for four years and had one 13-month-old child. He stated that he worked at the Bartlett Collins Glass Company in Sapulpa until he entered the Army in 1969. He further testified that he served in Viet Nam and was awarded the Purple Heart, the Bronze Star and an Army commendation medal. After discharge from the service he returned to work at the Bartlett Collins Glass Company in Sapulpa. On November 11, 1973, he was working at Liberty Glass Company.

The witness further testified that when he left his apartment at approximately 8:00 p. m. on November 11, three people remained in the apartment and he noticed a man in a nearby apartment looking out of his door. He stated that while eating supper in a local restaurant he saw the three people who had been in his apartment drive past. He further stated that he had no knowledge of a cigar box containing a leafy greenish-brown substance. He testified that his statement at the time of the search, that he had grown the marihuana, was untrue and was a "smart aleck" remark.

On cross-examination defendant testified that Terry Williams, Jim White and Danny Cue had arrived at the apartment with him at about 6:30 p. m. He stated that he did not smell burning marihuana in his apartment that night but that he did burn some incense.

The final witness for the defense was Dr. Paul Mooney, an Assistant Professor of Biochemistry at the Osteopathic College in Tulsa, who testified that he had performed the Duquenois reagent test on several different spices and coffees supplied him by defense counsel. He stated that he obtained a positive reaction to some of the types of coffee. A defense request that Dr. Mooney be permitted to perform these tests in court was denied.

 The defendant raises three assignments of error. In the first assignment of error he maintains that the trial court erred in failing to properly instruct the jury as to the legal requirements necessary to sustain a conviction for unlawful possession of marihuana as requested by the defendant. The determination of which instructions shall be given to the jury is a matter within the discretion of the trial court, provided that the instructions given fairly and correctly state the applicable law. *Barber v. State,* Okl.Cr., 388 P.2d 320 (1963); *Bradshaw v. State,* Okl.Cr., 510 P.2d 972 (1973); *Turman v. State,* Okl.Cr., 522 P.2d 247 (1974). We find that the instructions given in the instant case fairly and correctly state the applicable law. Accordingly, we find the defendant's first assignment of error to be without merit.

The defendant's second assignment of error is that the search warrant under which the marihuana was seized was invalid because a proper affidavit was not made and because the warrant was not served as required by law.

 First, the defendant contends that the affidavit contains mere conclusions and suspicions and is, therefore, insufficient to enable a magistrate to make an independent determination of probable cause. The United States Supreme Court stated in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), that:

"[A] simple assertion of police suspicion is not itself a sufficient basis for a magistrate's finding of probable cause, . . ."

Enough underlying facts and circumstances must be set forth in the affidavit to enable the magistrate to independently judge the affiant's conclusion that contraband is located where the affiant says it is. See, *Simon v. State,* Okl.Cr., 515 P.2d 1161 (1973).

■ An examination of the affidavit in the instant case leads us to conclude that it does set forth sufficient underlying facts and observations relied upon by the affiant to establish probable cause for issuance of a search warrant. We therefore find this contention to be without merit.

■ The defendant further contends that the search was invalid because the warrant was not served as required by law. Defendant argues that the officers were required by law to serve the search warrant on the empty apartment before commencing the search. He cites no statutes or cases in support of this contention. In the case of *Fryar v. State,* Okl.Cr., 385 P.2d 818 (1963), this Court stated in the third paragraph of the Syllabus that:

"It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citation of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this court will not search the books for authorities to support the mere assertion that the trial court has erred."

See also *Collins v. State,* Okl.Cr., 407 P.2d 609 (1965), and *Griffin v. State,* Okl.Cr., 453 P.2d 278 (1969). We find this contention, therefore, to be without merit.

The defendant's final assignment of error is that the trial court erred in admitting and refusing to admit evidence to the prejudice of defendant, thereby denying him a fair trial.

■ First, the defendant asserts that the trial court erred in admitting into evidence State's Exhibit No. 2, the smoker. He contends that the seizure of the smoker was outside the scope of the search warrant and therefore illegal. An examination of the search warrant reveals that it authorized the seizure of both marihuana and paraphernalia used in the consumption of marihuana. At the trial, Lieutenant Johnny Moore identified the smoker as a water pipe and stated that similar devices are used in the consumption of marihuana. We therefore conclude that seizure of the smoker was within the scope of the search warrant. We previously concluded that the affidavit and search warrant in the instant case were sufficient on the face. The evidence obtained by the search, i. e., the smoker, is therefore admissible. See, *State v. Edwards,* Okl.Cr., 311 P.2d 266 (1957).

■ Next, defendant asserts error in admitting the smoker into evidence on the grounds that it was irrelevant, immaterial, and prejudicial. Defendant argues that no law prohibits possession of such a device, that no evidence was presented to show that the device had been used in the consumption of any illegal substances, and that the smoker could be used for lawful purposes.

A review of the record discloses that, excluding the smoker, sufficient competent evidence was presented at trial to support a guilty verdict. We conclude that the error, if any, in admitting the smoker into evidence was harmless in view of the fact that defendant has failed to show prejudice. See, *Garcia v. State,* Okl.Cr., 501 P.2d 1128 (1972) and *Rogers v. State,* 9 Okl.Cr. 277, 131 P. 941 (1913).

■ Finally, the defendant asserts that the trial court erred in refusing to permit Dr. Mooney to perform, in the courtroom, the Duquenois reagent test on some coffees and spices. At the trial Dr. Mooney testified that when he performed the Duquenois reagent test on some types of coffee he obtained a positive reaction. The defendant argues that during the cross-examination of Dr. Mooney, the State cast

doubt upon the integrity of the samples he used and that it was therefore proper to perform the experiment in the courtroom using known samples from sealed containers opened in the courtroom.

Bill Warden testified that he had tested the substance by three methods: the Duquenois reagent test, a microscopic examination, and by smell, and found it to be cannabis sativa each time. The proposed courtroom experiment by Dr. Mooney would have been cumulative and would not have tended to controvert Mr. Warden's testimony concerning the results of the other two tests. This Court is, therefore, of the opinion that no injury to the defendant resulted from the trial court's refusal to permit the proffered courtroom experiment. This Court has held that the admission or exclusion of evidence from which no injury did or could have resulted is not a ground for reversal of judgment. See, *Garcia v. State,* supra. We find, therefore, that this assignment of error is without merit.

After considering the record and briefs before this Court and finding no error that would justify modification or reversal, the judgment and sentence appealed from is, accordingly, *AFFIRMED.*

BRETT, Presiding Judge (dissents).

I respectfully dissent to this decision because I consider the affidavit for issuance of the search warrant to be defective. The printed affidavit form alleges considerably more than the affiant was capable of knowing, according to his testimony at trial. He does, no doubt, possess the capability of detecting marihuana smoke, but beyond that knowledge all that he otherwise asserts in the affidavit constitutes bald conclusions. He had no knowledge whatsoever that the defendant ". . . wilfully, feloniously and unlawfully keeps the said narcotic drugs, marihuana, and barbiturate and stimulate drugs . . ." nor did he have any knowledge that ". . .

the above described premises is a place resorted to by addicts for the purposes of using narcotic drugs, marihuana, barbiturate and stimulant drugs and the illegal keeping or selling of the same . . ." all of which is set forth in the affidavit executed by the affiant. All that the affiant testified to was that he smelled marihuana burning. Consequently, if the search warrant was invalid, then the evidence offered should have been held to be inadmissible. Therefore, I believe this conviction should be reversed with instructions to dismiss the charge.