Kevin Eugene FUNKHOUSER and Jamie Ann Funkhouser, Appellants,

v.

STATE of Oklahoma, Appellee.

No. F–84–748.

Court of Criminal Appeals of Oklahoma.

May 26, 1988.

Rehearing Denied Nov. 22, 1988.

Brian M. Dell, Speck and Dell, Oklahoma City, for appellants.

Robert H. Henry, Atty. Gen., David W. Lee, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Kevin Eugene Funkhouser and Jamie Ann Funkhouser were jointly charged, tried and convicted by a jury in McClain County District Court Case Nos. CRF–83–126 and CRF–83–127 of Manslaughter in the Second Degree. Both appellants received two (2) year sentences. From these sentences the appellants appeal.

On July 15, 1983, Benjamin Keith Funkhouser, the appellants' three month old son died at home from complications arising from pneumonia. The appellants, although knowing Benjamin was ill, did not seek medical help. Instead, the parents relied on prayer and divine intervention to heal their child. The parents are members of The Church of The New Born that relies on divine intervention for healing sickness to the exclusion of medical assistance.

The church bases its belief on James 5:14–15 of the Holy Bible.[1] Pursuant to scripture, the elders of the church prayed for Benjamin and annointed him with oil one week prior to his death, and they visited again three days before he died.

During the two weeks that Benjamin was sick his condition continually worsened. The infant was unable to breast feed and the appellants fed him with an ear syringe. The appellants did not seek medical aid and the child died.

## I

Appellants contend that they were irreparably harmed since the trial court allowed the preliminary hearing to be televised. We disagree. A reading of the record reveals that the preliminary hearing was neither photographed nor broadcast.

A juvenile proceeding was being held prior to the appellants' preliminary hearing. Apparently the judge granted a television photographer access to the courtroom. The photographer filmed the juvenile proceeding and people in the courtroom, including the appellants.

Before the commencement of the preliminary hearing, the judge, upon defense counsel's objection, prohibited the media from filming the appellants, their counsel or defense witnesses pursuant to 5 O.S. 1981, Ch. 1, App. 4, 3(A)(7).

■ A preliminary hearing is within the definition of a criminal proceeding referred to in 5 O.S.1981, Ch. 1, App. 4, 3(A)(7)(e). This provision prohibits the photographing or broadcasting of any criminal proceeding without the accused's consent. The period before the preliminary hearing was not part of the proceeding. The appellants have failed to show they were harmed by any filming which took place in the courtroom prior to their preliminary hearing. Consequently, this assignment of error is without merit.

## II

The appellants contend that the trial court erred in overruling their motion to quash the information and dismiss the charges. The appellants argue that they should have been charged with Manslaughter in the First Degree (misdemeanor manslaughter) under 21 O.S.1981, § 711(1).

---

1. James 5:14–15 (KJV) reads as follows: "Is any sick among you? Let him call for the elders of the church; and let them pray over him, anointing him with oil in the name of the Lord: And the prayer of faith shall save the sick, and the Lord shall raise him up; and if he have committed sins, they shall be forgiven him."

The State charged the appellants with Manslaughter in the Second Degree under 21 O.S.1981, § 716. That statute reads:

Every killing of one human being by the act, procurement or culpable negligence of another which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable, nor justifiable homicide, is manslaughter in the second degree.

The State alleged culpable negligence of the appellants by failing and refusing to seek medical attention for their child.

 The appellants urge that they should have been charged with Misdemeanor Manslaughter. They assert that the misdemeanor, Omission to Provide for a Child, 21 O.S.1981, § 852 [2] was the predicate misdemeanor giving rise to Misdemeanor Manslaughter.

Reliance on 21 O.S.1981, § 852 provides an absolute defense to First Degree Manslaughter. *State v. Lockhart*, 664 P.2d 1059 (Okl.Cr.1983). To adopt the appellants' position would have forced the State into the untenable position of charging the appellants with a crime for which they could not be convicted in the State of Oklahoma.

 The filing of a criminal information is a decision that is within the prosecutor's discretion. The prosecutor has the sole authority to decide under which statute to file charges. *Wolfenbarger v. State*, 710 P.2d 114 (Okl.Cr.1985), *cert. denied* 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986). Title 21 O.S.1981, § 11 provides that where an act or omission is made punishable in different ways by different provisions of the criminal code, a violator may be punished under either. *Satepeahtaw v. State*, 595 P.2d 805 (Okl.Cr.1979).

Under the law in existence at the time the appellants were charged, the District Attorney could not have prosecuted for Manslaughter in the First Degree. The situation existed where the death of the appellants' child could not have been filed

as Manslaughter in the First Degree since the predicate misdemeanor would not have sustained the charge. The homicide was not murder, neither was the homicide excusable or justifiable. Therefore, the prosecutor properly charged the appellants with being culpably negligent of their son's death under Manslaughter in the Second Degree.

Based upon the foregoing, we find that the trial court did not err in overruling the appellants' motion to quash the information.

### III

Appellants allege that the trial court erred in denying their motion in limine. The appellants did not support this assignment of error with citation of authority. We have repeatedly held that assignments of error must be supported by argument and authority. *Perez v. State*, 614 P.2d 1112 (Okl.Cr.1980). Since the appellants were not deprived of their fundamental rights we will not search the books for authority to support their argument.

### IV

A further contention is that the trial court erred by refusing to instruct the jury on the appellants' version of the defense of good faith reliance on spiritual means.

The appellants relying on *Lockhart v. State, supra,* submitted Requested Instruction No. 11:

A person is justified under the law of this State in not providing medical treatment of his child if instead the parent in good faith, selects and depends upon spiritual means alone through prayer, in accordance with tenets and practice of a recognized church or religious denomination, for the treatment or cure of disease of such child.

We found this instruction appropriate in *Lockhart* where the appellants were charged with Manslaughter in the First Degree. In the present case, the appel-

---

**2.** 21 O.S.1981, § 852 has been substantially amended by Laws 1983 c. 44, § 1, codified at 21 O.S.Supp.1986, § 852, Nov. 1, 1983.

lants were charged with Manslaughter in the Second Degree and the appellants' requested instruction would have been improper.

■■■ The State submitted and the court adopted the instruction that:

A person *may be* justified under the law of this State in not providing medical treatment of his child if instead the parent in good faith, selects and depends upon spiritual means alone through prayer, in accordance with tenets and practice of a recognized church or religious denomination, for the treatment or cure of disease of such child, *provided that said treatment or cure is something which a reasonably careful person would do under similiar circumstances and conditions.* (Emphasis added)

This instruction accurately reflected the defense of good faith reliance on spiritual means. The instruction considered by the jury did not provide the appellants with the absolute defense proposed by their requested instruction. The trial court properly circumscribed the defense under a reasonably careful person standard that is within the definition of culpable negligence. We have defined culpable negligence as:

the omission to do something which a reasonable and prudent person would do, or the want of the usual and ordinary care and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions. *Crossett v. State*, 96 Okl.Cr. 209, 217, 252 P.2d 150, 159 (1952).

Good faith reliance on spiritual means alone is not a defense to Manslaughter in the Second Degree. Since the evidence warranted the defense of good faith reliance on spiritual means, the court properly allowed the appellants the defense within the boundaries of the definition of culpable negligence.

Appellants also assert the trial court erred in refusing their Requested Instruction No. 12. The requested instruction places the burden on the State to prove that the appellants were not acting in good faith in depending upon spiritual means alone, and failure to do so would result in a finding of not guilty. Appellants' requested instruction was properly refused by the trial court since rebutting good faith reliance on spiritual means alone was not the State's burden of proof.

Appellants claim that their objection to Instruction No. 6 should have been sustained. Instruction No. 6 is a verbatim Oklahoma Uniform Jury Instruction, OUJI–CR 462. These instructions are definitive and to be followed when applicable. 12 O.S.1981, § 577.2.

■■■ It is within the discretion of the trial court to determine the instructions presented to the jury. *Asher v. State*, 546 P.2d 1343 (Okl.Cr.1976). We find that the contested instructions fairly and accurately state the applicable law and consequently find appellants' assignment of error without merit.

V

■■■ The appellants contend that the jury was confused by the trial court's instructions and the jury's confusion indicated that the trial court erred in its instructions. The jury during deliberation inquired by note as to when punishment was to be set. The trial judge replied by note telling the jurors to read the instructions. When the jury returned to the courtroom with their verdict, it sentenced the appellants to "not less than two (2) nor more than four (4) years in the penitentiary." The trial judge instructed the jury to read the instructions. The jury returned to deliberate and subsequently returned a verdict fixing punishment at two (2) years in the penitentiary.

We find this assignment of error without merit. The jury seems to have exhibited some confusion over the sentencing provisions of the instructions, possibly over a perceived ambiguity in that instruction. However, the appellants have failed to demonstrate how the instructions in particular or as a whole were confusing and prejudicial. The jury returned with the minimum punishment, a two year sentence. This was in accordance with the jury's original intent to punish the appellants with time to serve in the penitentiary. We do

not find that the appellants were prejudiced by the instructions. Taken as a whole the instructions accurately reflect the applicable law. Furthermore, there is no substantial ambiguity in the instruction covering punishment. *See, DeVaughn v. State,* 717 P.2d 1153 (Okl.Cr.1986).

Accordingly, for the foregoing reasons, the judgment and sentence of the trial court is AFFIRMED.

BRETT, P.J., concurs in results.

PARKS, J., dissents.

PARKS, Judge, dissenting:

I dissent to the majority's affirmance of appellants' convictions, insofar as I agree with appellants that the trial court erred in overruling their motion to quash the information on the ground that the proper charge was first degree manslaughter pursuant to 21 O.S.1981, § 711(1), the misdemeanor-manslaughter rule.

The undisputed testimony in the instant case shows that the appellants knew their child was ill, but chose not to seek secular medical treatment relying instead on spiritual means through prayer. Where the misdemeanor-manslaughter doctrine is applicable, it absolutely precludes a charge of second degree manslaughter as a matter of law. *See* 21 O.S.1981, § 716; *Miller v. State,* 523 P.2d 1118, 1121 (Okla.Crim.App. 1974). At preliminary hearing and trial, the State presented evidence establishing a prima facie violation of 21 O.S.1981, § 852, which provided in relevant part: "Every parent of any child who willfully omits, without lawful authority, to perform any duty imposed upon the parent by law to furnish necessary food, clothing, shelter or *medical attendance* for such child is guilty of a misdemeanor...." (emphasis added). *See Lamb v. State,* 293 P.2d 624 (Okla. Crim.App.1956). A charge of first degree manslaughter was applicable here because the death of appellants' child occurred "without a design to effect death by a person while engaged in the commission of a misdemeanor." 21 O.S.1981, § 711(1). Accordingly, the charge of second degree manslaughter was improper and the trial

court erred in overruling the motion to quash.

The majority ignores the foregoing applicable law, stating that reliance on the good faith spiritual means defense of 21 O.S. 1981, § 852, would have provided appellants with an absolute defense to first degree manslaughter. It "would have forced the State into the untenable position of charging the appellants with a crime for which they could not be convicted in the State of Oklahoma." *Majority Opinion,* at 697. Such a position impermissibly invades the province of the jury by substituting the majority's judgment, which is speculation at best, that the jury would have found this defense under the facts presented. But the question of whether appellants relied upon spiritual means "in good faith" within the meaning of 21 O.S.1981, § 852, was a question for the jury upon proper instructions. It was for the jury, not the prosecutor or this Court, to determine whether the defense was available based on the evidence presented.

The majority also fails to reconcile its decision today with its prior reasoning in *State v. Lockhart,* 664 P.2d 1059 (Okla. Crim.App.1983). Judge Bussey, writing for a unanimous court in *Lockhart,* 664 P.2d at 1060, stated:

> We believe that the statute is clear and unambiguous, and expresses a legislative intent that those parents who rely in good faith upon the tenets of their religious belief for the care and protection of their children be allowed a defense to [charges] subsequently arising from their failure to obtain medical assistance for their children.

Thus, under *Lockhart,* this Court recognized a legislative intent not to punish parents who relied in good faith upon spiritual means for the physical well being of their children. It is absurd to allow district attorneys to circumvent the expressed legislative intent by charging an inapplicable offense under the guise that district attorneys have sole authority to determine what charge to file, as such reasoning flies in the face of Section 716 and *Miller, supra.*

Although it is true that the Legislature amended Section 852, effective November 1, 1983, to eliminate this defense "where permanent physical damage could result to such child," this substantive change cannot be applied retroactively to the offense here which occurred on July 15, 1983, without violating the *ex post facto* prohibition. Okla.Const. art. II, § 15. Based on the foregoing, I would reverse and remand for a new trial consistent with the views expressed herein.